IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| STEVE PICK<br><br>Plaintiff<br><br>v.<br><br>CITY OF REMSEN, et. al.<br><br>Defendants | NO. 5:13cv4041 MWB<br><br>PLAINTIFF'S BRIEF IN SUPPORT OF RESISTANCE TO DEFENDANT'S MOTION FOR ORDER OF DESTRUCTION OF DOCUMENT |

COMES NOW the Plaintiff and provides the following brief:

# TABLE OF CONTENTS

**I.  LEGAL STANDARDS – INADVERTENT DISCLOSURE..……..………2**

**II. APPLICATION OF LEGAL STANDARDS……………………………….3**

    1) Reasonableness of Precautions……………………………………….4

        A) *Draus v. Healthtrust, Inc*…………………………………………..4
        B) *The case at bar*……………………………………………………...5

    2) Number of Inadvertent Disclosures……………………………………7

    3) Extent of Disclosures…………………………………………………..8

        A) *Draus v. Healthtrust, Inc*…………………………………………...8
        B) *The case at bar*……………………………………………………...9

    4) Time taken to rectify……………………………..…………………….9

        A) *Draus v. Healthtrust, Inc*……………………….…………………...9
        B) *The case at bar*……………………………………..……………...9

    5) Overriding Issue of Fairness……………………..…………………11

        A) *Draus v. Healthtrust, Inc*……………………….…………………11
        B) *The case at bar*……………………………………..…………....12

**III. CONCLUSION………………………………………………………….14**

## I. LEGAL STANDARDS – INADVERTENT DISCLOSURE

Federal Rule of Evidence 502, which took effect in 2008, governs disclosures of privileged information made in a federal proceeding and the scope of any waiver. Subsection b of that rule addresses inadvertent disclosures. Rule 502(b) states as follows:

> (b) Inadvertent Disclosure. When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

In *U.S. SEC v. Welliver*, 2012 WL 8015672 (D. Minn., 2012), the court explained that the Advisory Committee Notes to Rule 502(b) reference multiple factors to consider in determining whether an inadvertent disclosure results in a waiver:

> The stated factors (none of which is dispositive) are the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of fairness.... Other considerations bearing on the reasonableness of a producing party's efforts include the number of documents to be reviewed and the time constraints for production.

Advisory Comm. Notes, Fed.R.Evid. 502(b). *Id.* at *6.

The factors set forth above are the same five factors used in the "middle of the road approach" utilized by the defendants in their brief. This approach was adopted by

the Eighth Circuit in <u>Gray v. Bicknell</u>, 86 F.3d 1472 (8th Cir. 1996), often referred to as the *Hydraflow* test. <u>See id</u>. at 86 F.3d 1484 (referring to <u>Hydraflow, Inc. v. Enidine Inc.,145 F.R.D. 626, 637 (W.D.N.Y.1993)</u>. Thus, the *Hydraflow* test has been folded into the <u>Rule 502(b)</u> inquiry. *Welliver* at *6.

Here, the defendants have the burden of proving the existence of the privilege and that any waiver by disclosure was inadvertent. <u>U.S. v. Koning</u>, 2009 WL 2982910 (D.Neb. 2009) citing <u>Hollins v. Powell, 773 F.2d 191, 196 (8th Cir .1985)</u> also citing <u>Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc.,</u> 132 F.R.D. 204, 207 (N.D.Ind.1990) ("When the producing party claims inadvertent disclosure it has the burden of proving that the disclosure was truly inadvertent and that the privilege has not been waived.").

Therefore, Plaintiff agrees that Defendants set forth the correct factors to be applied in this case on the issue of whether defendants have waived attorney client privilege regarding the disclosure of the email contained in exhibit A (under seal). However, Plaintiff disagrees with the analysis of the defendants and Plaintiff believes that the *Hydraflow* factors weigh in favor of concluding a waiver has occurred.

## II.  APPLICATION OF LEGAL STANDARDS

The U.S. District Court for the Southern District of Indiana applied the five factors outlined above to a case with facts that are very similar to the case at bar in <u>Draus v. Healthtrust, Inc.</u>, 172 F.R.D. 384 (S.D. Ind. 1997). In <u>Draus</u>, the defendants produced, in connection with a two-day deposition of plaintiff Draus, approximately 2,400 documents in ten binders. A letter from Defendants' attorney to the hospital board of the Defendant was included in the documents produced. The letter from the attorney was also listed in a

log prepared by Defendants and produced to Plaintiff listing responsive documents as to which Defendants claimed a privilege from discovery. <u>Id</u>. at 385.

During the second day of the deposition, defendants' counsel realized the letter from defendants' counsel had been produced and demanded its return. Plaintiff's counsel refused. Two days later, defendants' counsel again requested the return of the letter. Counsel for plaintiff refused again to return the letter. <u>Id. at 385-86</u>.

The court analyzed each of the five factors of the "middle of the road approach" in relation to the facts of the case before it and concluded that Defendants had waived the privilege. Here, Plaintiff will likewise analyze each factor as it applies to the case at bar and compare it with the court's analysis in <u>Draus</u>.

**1) Reasonableness of Precautions**

A. <u>Draus v. Healthtrust, Inc.</u>

The court initially noted that it is difficult for a party to show that it took reasonable precautions to prevent production of privileged documents where those precautions obviously failed. <u>See Draus</u> at 388. Defense counsel and a paralegal reviewed the documents to be produced before they were actually produced to plaintiff's counsel. The defendants also prepared a log of privileged documents and listed the subject letter on that log. <u>Id</u>. The court found that the record did not indicate any substantial time pressure during the document production process. The court noted that the production occurred nearly two years after the first document request was served, far more than the presumptive thirty days permitted by the Federal Rules of Civil Procedure and concluded that Defendants had ample time to take measures to prevent production of privileged documents. <u>Id</u>.

4

The court also reasoned that the privileged character of the subject letter was as open and obvious as can be imagined. On its face, the letter was on law office letterhead, from the primary lawyer involved in the *Draus* matter, addressed to the hospital's board of trustees. *Id*. The court also found that "just in case all those clues were overlooked, the first page bears the underlined, all-capitals, boldface warning: 'PRIVILEGED AND CONFIDENTIAL/ATTORNEY–CLIENT PRIVILEGED." *Id*. The court found that under those circumstances, "even keeping in mind the deceptive clarity of hindsight," that in the absence of any extenuating circumstances such as extraordinary time pressure, production of a document like the one produced to opposing counsel in litigation shows that the steps taken to avoid inadvertent production were not reasonable. *Id*.

*B. The case at bar*

Here, Defense counsel states that after the documents were printed and provided to him by his clients they were saved and "counsel reviewed each email to make certain that it was in fact relevant and not privileged." *See* Defendants' brief p. 3. This is the only screening process that defense counsel made. Defense counsel did not have a paralegal, legal assistant or other attorney review the emails as well for privileged documents or to double check his review. Defense counsel did not create a privilege log to identify those documents that were believed to be privileged and needed to be removed from the production in order to ensure removal of privileged communication. The printed emails were provided to defense counsel by his clients and counsel does not indicate that he made any effort to physically separate into piles those documents that were privileged and label them "privileged" versus labeled "non-privileged" documents that would provide greater assurance that privileged documents would not be inadvertently

disclosed. The screening process used by defendants was even more lax than that used by counsel in *Draus*. This lax screening process weighs in favor of finding that no reasonable precautions were taken.

Like *Draus*, here, there was no substantial time pressure. The initial request for production from Plaintiff occurred on August 9, 2013. *See* exhibit 1. The email which is the subject of defendants' motion was not produced until January 22, 2014. *See* exhibit 2. Far more than the presumptive 30 days under the rules. Thus, defendants had ample time to take measures to prevent production of the subject email.

Like *Draus*, here, the subject email shows at the beginning of it that it was sent from "Doug Phillips", the defendants' attorney in this case, and sent to each of the Utility Board Members. If counsel indeed reviewed each email, this should have alerted counsel to the possible privileged nature of the email. The end of the email on the next page shows the name, address and phone number of counsel's law firm and the firm website address, much like firm letterhead. Thus, even if counsel overlooked the first page showing the email from "Doug Phillips", seeing the next page with letterhead like firm name, address, and website should have also alerted counsel to the privileged nature of the email.

Like *Draus,* even if counsel missed the first two clues mentioned, the email in this case at its conclusion had a warning in all capital letters labeled "CONFIDENTIAL NOTICE". The rest of the warning also stated that "…the information contained in this email message is attorney/client privilege…." This is significant because no other emails produced had the same warning. The great majority of all emails had no warning at all as the email from Rachael Keffeler at the top of exhibit A shows. This makes overlooking

6

such an email with a warning which is designed to alert one to its privileged and confidential nature weigh more in favor of the conclusion that the defendants did not take reasonable precautions.

Furthermore, the number of overall documents produced was relatively small. According to the defendants, a total of requested documents that were produced equaled 440 pages with 183 of those pages being emails. Plaintiff only received a total of 398 pages of documents from the link to which Plaintiff's counsel was referred in exhibit 2 so there appears to be some discrepancy. Regardless, the defendants were not faced with a situation of making a mass production of thousands upon thousands of documents which would make inadvertent disclosure of privileged material more likely to "fall through the cracks". In *Draus* the total document production was 2,400 pages. The court reasoned that:

> That may seem like quite a bit of paper to those not familiar with modern litigation, but it is by no means a huge volume. It is certainly not so much paper that it is unreasonable to expect counsel or trained legal assistants to eyeball each document before producing it to opposing counsel.

*Draus* at 388. Here, a substantially less number of documents required production and in light of the fact that it took Defendants over five months to produce the requested emails, it is not unreasonable whatsoever to require counsel or trained legal assistants to eyeball each document before producing it to Plaintiff's counsel. This too weighs in favor of finding that the precautions taken were not reasonable.

2) **Number of Inadvertent Disclosures**

7

Plaintiff agrees that the disclosure at issue concerns one email that spans over three pages, but its content doesn't completely cover all three pages. Although, the email only spans over three pages, the disclosure must be viewed in relation to the relatively small number of documents produced as discussed above.

**3) Extent of Disclosures**

A. *Draus v. Healthtrust, Inc.*

The court held that the disclosure involved only one document, but the disclosure of that document was utterly complete, and it was made to the opposing party most interested in the contents of the document. *Draus* at 389. The court noted that it was not faced with a case where the inadvertent disclosure at issue was made to a third party. *Id*. citing *In re Sealed Case,* 877 F.2d at 977, 980 (disclosure to separate government agency in separate proceeding). The court also held that it was not a case where the disclosure was minimal or constructive, as when someone might glance in an open file or designate a document for copying before reading it. *Draus* at 389 citing *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group,* 116 F.R.D 46, 51–52 (M.D.N.C. 1987) (merely glancing in a file or designating documents for copying might not justify finding of waiver when essence of document's contents not yet disclosed); also citing *Chubb Integrated Sys. Ltd. v. National Bank of Washington,* 103 F.R.D. 52, 63 (D.D.C.1984) (mere fact that opponents had opportunity to open file drawer cannot constitute disclosure sufficient for waiver; document is disclosed when opponent learns "gist" of the contents); *Ranney–Brown Distrib., Inc. v. E.T. Barwick Indus., Inc.,* 75 F.R.D. 3, 6 (S.D.Ohio 1977) (distinguishing between complete disclosure of contents and situations where contents are not known). In the case before the court in *Draus*, the letter

was produced to opposing counsel who read it before Defendants demanded its return. *Draus* at 389. The court found this factor to weigh in favor of waiver. *Id*.

   B. *The case at bar*

Here, the disclosure of the email was utterly complete and made to the opposing party, the Plaintiff, most interested in the contents of the document. Other than counsel for the plaintiff, the only other person to whom disclosure was made was the Plaintiff himself. Plaintiff has not disclosed the email to anyone else. Like *Draus*, this is not a case involving disclosure to a third party or a minimal disclosure such as a glance at an open file or a document left out sitting on a table during depositions. Like *Draus*, Plaintiff's counsel read the contents of the document before Defendants' counsel demanded its return. This factor weighs in favor of concluding that a waiver of the email has occurred.

   **4) Time taken to rectify**

   A. *Draus v. Healthtrust, Inc.*

In *Draus*, the court held that the defendants identified their error quickly and demanded return of the subject letter the day after it was produced. *Draus* at 388. The court reasoned that it was not a case where the producing party allowed its error to go uncorrected for weeks, months, or longer, or allowed the opponent to use the document in discovery without putting the opponent on notice of the claim of privilege. *Id*. The court found this factor to weigh in favor of non-waiver. *Id*. at 389.

   B. *The case at bar*

9

Here, Defendants may or may not have identified the disclosure quickly, depending on how one judge's the time from which the Defendants should have taken notice. Defense counsel notified Plaintiff's counsel immediately upon discovery after Plaintiff's counsel had identified the document in answer to Defendants' interrogatories. However, the contact made requesting destruction of the email was made more than two months after the disclosure. Although the subject email was not made an exhibit nor referred to at the depositions, many of the emails that were produced had been identified, marked and used as exhibits with several of the defendants over the course of three days of depositions. Use of the emails at deposition should have prompted Defendants to review the emails produced which would have led to the discovery of subject email that was produced. But even after the depositions were completed, no request was made until after the document was identified by Plaintiff's counsel in answers to interrogatories.

Furthermore, at the depositions of Bartolozzi and Keleher, each being a Utility Board member, each was asked whether, prior to the July 16, 2012 Utility Board meeting, they had any discussion or communication among the board members or *anyone else* about making sure that at the meeting it looked like Pick's position was being eliminated rather than he was being fired for some other reason. Bartolozzi and Keleher each answered "no". After the question was asked of each defendant, defense counsel did not make an objection insofar as the question sought attorney client privileged communications. *See* exhibit 3, dep. tr. of Bartolozzi p. 76 line 17-25; exhibit 4, dep. tr. of Keleher p. 27 line 3-10. Thus, circumstances existed which should have prompted defendants to contact counsel earlier about the subject email. Plaintiff believes that this factor should also weigh in favor of waiver. *See Clarke v. J.P. Morgan Chase &*

*Co.,* 2009 WL 970940, at *5–6 (S.D.N.Y. 2009) (finding waiver where defendant's failure to raise privilege more than two months after it "learned" or "should have learned" of the privileged document's disclosure was an "inexplicably long time")

### 5) **Overriding Issue of Fairness**

A. *Draus v. Healthtrust, Inc.*

In analyzing the overriding issue of fairness, the court held that the subject letter was relevant to some of the core issues in the case and that it directly contradicted several of the defendants' contentions that were central to their motion for summary judgment. *Draus* at 389. The court went on to describe the scenario that would be faced at trial if the court were to grant the defendants' motion and disallow use of the letter. *Draus* at 390. The court explained that the scenario would essentially permit Defendants to provide evidence in support of its position, but disallow Plaintiff to present contrary evidence which the court, Plaintiff, Defendants and their counsel knows contradicts Defendants' evidence. *Id*.

In concluding that overriding issues of fairness weigh in favor of finding a waiver, the court declared as follows:

> In the wake of a complete disclosure of the privileged document to the opposing party, resulting from the defendants' failure to take reasonable steps to protect the privilege, defendants would be asking the court to rescue the defendants from a serious error of their own making by joining in what would be tantamount to deception of the jury. Of course, the attorney-client privilege is so basic to our judicial system that it can be used to prevent disclosure of highly probative and damaging evidence. But the powerful policies that support the privilege are undermined after complete disclosure of the privileged communication to opposing counsel.

11

*Id*. The court also limited the waiver to the particular letter. *Id*.

  B. *The case at bar*

Defendants' position is that Plaintiff's job with the City of Remsen was "eliminated" and that he wasn't terminated for some other reason. Plaintiffs have filed this suit alleging various discrimination claims and a claim of retaliation. Plaintiff has also alleged wrongful termination in violation of the employment manual as well as defamation. *See* Fourth Amended Complaint.

In discrimination cases, such as disability discrimination, and retaliation claims under Title VII, a plaintiff can submit a case to a jury by either: (1) presenting proof of direct evidence of discrimination; or (2) creating the requisite inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Pye v. Nu Aire, Inc.,* 641 F.3d 1011, 1020 (8th Cir.2011).

Under the *McDonnell Douglas* framework, a plaintiff has the initial burden of establishing a prima facie case of discrimination or retaliation. *Pye,* 641 F.3d at 1021. If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions. *Pye,* 641 F.3d at 1021. If the employer articulates such a reason, the burden returns to the plaintiff to show that the employer's justification is a pretext. *Pye,* 641 F.3d at 1021. To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both that

the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason. *See* Lors v. Dean, 595 F.3d 831, 834 (8th Cir.2010).

The subject email, marked exhibit A (under seal) is highly relevant to the issue of pretext. The email instructs the Utility Board members what to say and what not to say at the meeting where the decision was made to terminate Plaintiff's job. In the email, Defense counsel begins his instruction to the board with all capital letters to highlight its importance. This was to be a public meeting which was going to be recorded. At the time of this Utility Board meeting, Plaintiff was on medical leave for his claimed disability and had taken other periodic medical leaves in the previous six months. Exhibit A (under seal) makes specific instruction to refrain from discussing Plaintiff's periodic absences from work.

The email also makes reference to the letter which the City received from Plaintiff's lawyer just a couple of weeks earlier when providing its instructions to the board about what to say and what not to say. The letter from Plaintiff's attorney informed the City that Plaintiff would seek to enforce his rights under state and federal law. *See* exhibit 5. That email instruction from Defense counsel is highly relevant to Plaintiff's retaliation claim[1].

---

[1] Plaintiff 's retaliation claim is being asserted under Title VII and the ICRA. Plaintiff also has alleged wrongful termination in violation of the City of Remsen's employment manual. Plaintiff contends the terms of the manual created an employment contract and Remsen has breached that contract by its termination of Plaintiff's employment. However, in the event Plaintiff's employment is found to be at will, Iowa law protects such an employee from retaliatory discharge under a public policy exception for asserting well defined public policy rights. *See* Niblo v. Parr Mfg., Inc., 445 N.W.2d 351, 353 (Iowa

13

Case 5:13-cv-04041-MWB Document 231 Filed 04/07/14 Page 13 of 15

Barolozzi and Keleher each testified that they had no discussion or communication among the board or with anyone else to craft their meeting to make sure it looked like they were eliminating Plaintiff's position rather than terminating his job for some other reason. This subject email contradicts that testimony and it would be manifestly unjust to disallow Plaintiff from using it after Defendants have disclosed it. Surely, a jury can infer from this email that the Utility Board's stated reason for terminating Plaintiff's job was false and the true reason for terminating Plaintiff's job was for a discriminatory purpose.

Like *Draus*, this error on the part of the defendants was of their own making and the court should not rescue the defendants from their own error at the expense of Plaintiff. Overriding issues of fairness weigh in favor of finding that Defendants waived the privilege in this case.

### III. CONCLUSION

The defendants did not take reasonable precautions in their screening process to avoid the disclosure. The number of documents produced was relatively small and there were no undue time constraints. The disclosure was complete and made to opposing counsel. The email is highly relevant to core issues in the case, in particular, whether Defendants stated reasons for terminating Plaintiff's job were merely a pretext for a discriminatory reason. Overriding issues of fairness require that the court find that Defendants have waived the attorney client privilege and their motion for order directing destruction of the disclosure should be denied.

---

1989) (retaliatory discharge found where employee made threat to file a workers' compensation claim). Thus, the subject email is highly relevant to show pretext under the state retaliatory discharge claim as well.

14

JACOBSMA & CLABAUGH P.L.C.

_____
Michael J. Jacobsma   #AT0003935
81 West 1st Street
PO BOX 226
Sioux Center, IA 51250
Phone:  712-722-3453
Fax:      712-722-3470
Email:  mjacobsma@nwiowalaw.com
ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

**The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on the 7th day of April by electronically filing the foregoing instrument with Clerk of Court using the CM/ECF system which sent notification of said filing to all CM/ECF participants.**

_____
Michael J. Jacobsma   #AT0003935