**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

STEVE PICK,

Plaintiff,

vs.

CITY OF REMSEN, PAIGE LIST, RACHAEL KEFFELER, KIM KELEHER, JEFF CLUCK, CRAIG BARTOLOZZI, and KEVIN ROLLINS,

Defendants.

No. C13-4041-MWB

**MEMORANDUM OPINION AND ORDER REGARDING THE PARTIES' MOTIONS IN LIMINE**

**(*FILED UNDER SEAL*)**

---

**TABLE OF CONTENTS**


***I. INTRODUCTION .......... 2***

***II. LEGAL ANALYSIS .......... 3***
- ***A. Pick's Motion In Limine .......... 3***
  - ***1. Evidence and arguments .......... 3***
  - ***2. Analysis .......... 3***
- ***B. The Defendants' Motion In Limine .......... 6***
  - ***1. Evidence of settlement discussions .......... 6***
  - ***2. Evidence of liability insurance .......... 8***
  - ***3. Evidence of the tire-slashing incident .......... 8***
  - ***4. Testimony from law enforcement officers .......... 9***
  - ***5. Evidence supporting claims based on notice, opportunity to be heard, and interference with contract .......... 10***
  - ***6. Evidence that there was no "going away party" .......... 14***

***III. CONCLUSION .......... 15***

## *I. INTRODUCTION*

Plaintiff Steve Pick, the former long-time operations director of the utilities department of the City of Remsen, Iowa, (the City) brought numerous claims against the City and various City officials arising from or related to his termination when his position was ostensibly "eliminated" by the City's Utilities Board. The factual background to Pick's claims is set forth in considerable detail in my Memorandum Opinion And Order Regarding Defendants' Motion For Summary Judgment (Summary Judgment Ruling) (docket no. 66), 3-17, filed August 27, 2014, so I will not repeat that factual background here.

In my Summary Judgment Ruling, I granted summary judgment in favor of the defendants on all but the following claims: (1) the part of Count III asserting a claim for intentional infliction of emotional distress based on First Amendment retaliatory conduct; (2) Count V, alleging disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Iowa Civil Rights Act (ICRA), IOWA CODE CH. 216; and Count VIII, alleging retaliation (a) for Pick's request for accommodation of his disability, in violation of the ADA and ICRA, and (b) for a letter from Pick's attorney complaining about his treatment and threatening suit, *i.e.*, a First Amendment retaliation claim.

This case is now before me on Pick's July 3, 2014, First Motion In Limine (docket no. 58),[1] and the defendants' August 12, 2014, Motion In Limine (docket no. 63). These motions were filed in anticipation of a jury trial on Pick's claims, if any of his claims survived summary judgment. That jury trial is now set to begin on September 22, 2014. Both motions were duly resisted, and I find that they are ripe for consideration on the parties' written submissions.

[1] Pick has not filed a second or subsequent motion in limine.

## *II. LEGAL ANALYSIS*

In his Motion In Limine, Pick seeks exclusion of a single category of evidence. In their Motion In Limne, the defendants seek exclusion of six categories of evidence. Because there is no overlap between the pending motions, I will consider them separately, in turn.

### *A. Pick's Motion In Limine*

#### *1. Evidence and arguments*

In his Motion In Limine, Pick seeks exclusion of evidence that he is receiving or the amount that he is receiving in Iowa Public Employee's Retirement System (IPERS) payments, because he contends—in conclusory fashion—that it is not relevant or material to any issue in this case. In their Resistance (docket no. 59), the defendants contend that, if Pick prevails and is awarded back pay, they are entitled to a credit for IPERS benefits that Pick has been receiving since July 2012, in order to prevent a "double recovery." In a Reply (docket no. 6), greatly exceeding the length and detail of his original Motion, Pick asserts that his IPERS pension benefits are from a collateral source, the State of Iowa, not from his employer, the City; that those benefits should be treated as earned and not deductible from back pay; and that he will not be requesting damages for the unpaid contributions to IPERS that the City of Remsen has not paid since his discharge. He contends that, in these circumstances, evidence of his IPERS payments is not admissible.

#### *2. Analysis*

The defendants rely on *Glover v. McDonnell Douglas Corp.*, 981 F.2d 388, 396-397 (8th Cir. 1992), *vacated on other grounds and remanded, Glover v. McDonnell Douglas Corp.*, 510 U.S. 802 (1993), *readopted on remand, Glover v. McDonnell*

*Douglas Corp.*, 12 F.3d 845, 848 (8th Cir. 1994). They appear to read *Glover* as standing for a blanket rule that a defendant employer is always entitled to a credit against back pay for pension benefits that a wrongfully discharged employee has received since his or her discharge. The Eighth Circuit Court of Appeals has expressly rejected such a reading of *Glover*, however.

As the Eighth Circuit Court of Appeals explained in *Smith v. World Ins. Co.*, 38 F.3d 1456 (8th Cir. 1994),

> We have held that payments made from a pension plan that is separate from and independent of the employer's business need not be deducted from plaintiff's backpay award because those payments are from a source other than the employer (i.e., a collateral source). *Doyne v. Union Elec. Co.*, 953 F.2d 447, 451 (8th Cir.1992). We also have held, however, that an impermissible double recovery occurs where the district court awards the plaintiff backpay including employer pension contribution payments which would have been made on his account but for the unlawful discharge but fails to deduct the pension benefits the plaintiff already received. *Glover v. McDonnell Douglas*, 981 F.2d 388, 396–97 (8th Cir.1992), *vacated on other grounds*, 510 U.S. 802, 114 S.Ct. 42, 126 L.Ed.2d 13 (1993), *readopted on remand*, 12 F.3d 845, 848 (8th Cir.1994). We did not hold in *Glover*, as World argues, that pension payments made to plaintiffs must be deducted from every award of backpay. Those payments should be deducted under *Glover* only when the backpay award includes the amount of contributions the employer would have made to the plaintiff's pension but for the unlawful discharge. In essence, *Glover* comes into play only when the plaintiff is allowed to draw on his pension after being unlawfully discharged, and the award of backpay includes amounts designed to put his pension account in the same position as though he were never discharged.

*Smith*, 38 F.3d at 1465-66. The court in *Smith* then "reject[ed] [the] contention that all pension payments made after an unlawful discharge must be deducted from subsequent backpay awards." *Id.* at 1466.

A few years later, the Eighth Circuit Court of Appeals again explained,

> In *Smith*, we refused to reduce an ADEA back pay award by pension benefits received on account of the employee's wrongful discharge and remanded the case to determine whether "the award of backpay includes amounts designed to put [the employee's] pension account in the same position as though he were never discharged." [*Smith*, 38 F.3d at] 1466.

*Arneson v. Callahan*, 128 F.3d 1243, 1248 (8th Cir. 1997). In *Arneson*, the court concluded that the district court had properly refused to deduct the plaintiff's disability benefits from his back pay award, because those benefits were "from a collateral source and should not be considered interim earnings." *Id.* The court reasoned that it believed the plaintiff's back pay award did not include payments from his disability pension contributions; that the disability benefits did not come entirely from the plaintiff's employer, but also from his own contributions; and that the disability payments "were made to carry out a social policy wholly independent of back pay awards and they did not discharge any direct obligation that the [employer] had to [the plaintiff]." *Id.*

Here, it does not appear that IPERS payments should be deducted from any back pay award that Pick might recover. First, those payments are from a collateral source and should not be considered interim earnings. *Id.* I also believe that employees contribute to their IPERS accounts, just as the plaintiff did in Arneson, that the pension payments are "made to carry out a social policy wholly independent of back pay awards," and that the pension payments did not discharge any obligation that the defendants had to Pick. *Id.* Most importantly, however, any potential for double recovery can be avoided in this case by excluding from any claim for back pay the unpaid contributions to IPERS that the City has not paid since Pick's discharge. *See id.*; *Smith*, 38 F.3d at 1466. If

that is done, as Pick represents that he will do, then the basis on which the defendants contend that evidence of IPERS payments to Pick is relevant no longer exists. Therefore, if any back pay claim excludes unpaid contributions to IPERS that the City has not paid since Pick's discharge, then evidence of the IPERS payments will be excluded as irrelevant, pursuant to Rules 401 and 402 of the Federal Rules of Evidence, and as unduly misleading and confusing, even if somehow probative, pursuant to Rule 403 of the Federal Rules of Evidence.

In short, Pick's Motion In Limine is granted, on the condition that he excludes from any claim for back pay any unpaid contributions to IPERS that the City has not paid since Pick's discharge.

### *B. The Defendants' Motion In Limine*

In their August 12, 2014, Motion In Limine, the defendants seek an order excluding six categories of evidence. In his initial Response (docket no. 64), Pick does not resist exclusion of two of the categories of evidence, but does resist exclusion of the other four, at least in part. In a Supplemental Response (docket no. 65), Pick clarifies his position on the admissibility of one of the categories of evidence that he initially did not dispute. I will consider, in turn, all six categories of evidence that the defendants seek to exclude.

#### *1. Evidence of settlement discussions*

The defendants assert that, prior to and immediately following the filing of Pick's suit, the parties engaged in a short series of settlement discussions, but were unable to settle the case. The defendants assert that evidence of the settlement discussions should be excluded pursuant to Rule 408 of the Federal Rules of Evidence. Pick initially stated that he had no resistance to the defendant's request to exclude this category of evidence. In his Supplemental Response, however, Pick argues that, while portions of a letter from

his attorney to the Remsen City Attorney, dated June 26, 2012, are admissible, the last paragraph of the letter, which invites a discussion of a separation package, "pertains directly to possible settlement discussions," and he "agrees to redact that paragraph." Plaintiff's Supplemental Response (docket no. 65). 1-2.[2]

As the Eighth Circuit Court of Appeals has recognized, Rule 408(a) of the Federal Rules of Evidence "prohibit[s] the use of settlement documents at trial to prove liability or to impeach through inconsistent statements or contradiction." *Government of Ghana v. ProEnergy Servs., L.L.C.*, 677 F.3d 340, 344 (8th Cir. 2012). Rule 408(b) also provides, however, that such evidence "'may be admitted "when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."'" *B&B Hardware, Inc. v. Fastenal Co.*, 688 F.3d 917, 920 (8th Cir. 2012) (quoting *Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000), in turn quoting Rule 408 (2000)); *see generally id.* (noting that the principles in Rule 408 have not been modified by amendments in 2006 and 2011). Here, the defendants have relied on Rule 408(a) as prohibiting use of any evidence of settlement discussions, and Pick has not asserted that any exception identified in Rule 408(b) is applicable here.

Therefore, the part of the defendants' Motion In Limine seeking exclusion of evidence of settlements is granted. To the extent that Pick might otherwise be allowed

---

[2] Pick asserts that portions of the June 26, 2012, letter from his attorney are relevant to his "retaliation," "disability discrimination," "defamation," and "breach of contract" claims. *See* Plaintiff's Supplemental Response, 1. The first three claims survived the defendants' Motion For Summary Judgment. The defendants have not expressly or impliedly attempted to exclude the June 26, 2012, letter in its entirety or any portion of that letter other than a portion that suggests a separation agreement, *i.e.*, some form of settlement.

to offer his attorney's June 26, 2012, letter into evidence, Pick must redact it to exclude or hide the last paragraph inviting discussions of a separation package.

***2. Evidence of liability insurance***

The second category of evidence that the defendants seek to exclude is evidence that they are insured by EMC Insurance Companies and that EMC is affording the defendants a defense in this case. The defendants contend that such evidence is inadmissible pursuant to Rule 411 of the Federal Rules of Evidence. Pick expressly states that he "has no resistance" to this part of the defendants' Motion In Limine. Therefore, it is granted.

***3. Evidence of the tire-slashing incident***

The third category of evidence that the defendants seek to exclude is evidence of an incident in which someone slashed the tires of Pick's vehicle shortly after he filed this lawsuit. The defendants assert that the Remsen Police investigated the incident, but they did not identify any suspects. The defendants point out that defendant Bartolozzi's daughter lives next door to Pick. The defendants argue that there is no evidence to connect defendant Bartolozzi, his daughter, or anyone else to this act of vandalism, and that any suggestion that one of the defendants, or someone at their urging, is responsible for this act is unfairly prejudicial to defendants. Therefore, they argue that evidence of this incident should be excluded pursuant to Rule 403. Pick admits that he cannot argue that defendant Bartolozzi is personally responsible for the tire-slashing incident. Nevertheless, he argues that the occurrence of this incident in the sequence of events giving rise to his claims, particularly, in proximity to the filing of the lawsuit in this case, is relevant.

First, I seriously doubt that the tire-slashing incident has any probative value at all in this case, where there is absolutely no evidence other than proximity in time to the filing of Pick's lawsuit that it is somehow "related" to the filing of his lawsuit or

indicative of any relevant animus towards him. Second, such evidence raises no more than weak, but potentially prejudicial, innuendo. This evidence might invite jurors to base their verdict on an improper emotional basis, such as a response to inferences that Pick suffered some generalized harassment, rather than on the basis of the evidence before them specifically relating to his claims. *See* FED. R. EVID. 403, Advisory Committee Notes (explaining that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one"); *see also United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting this note); *United States v. Dierling*, 131 F.3d 722, 730-31 (8th Cir. 1997) (considering whether evidence was unfairly prejudicial, because it might lead to a decision on an improper basis, where it purportedly had no connection to the charged offense and revealed grisly or violent behavior that made the defendant appear "dangerous"). At the very least, such evidence would confuse the issues, mislead the jurors, and waste time, as a "mini-trial" about the tire-slashing incident would likely result, with ultimately nothing more to show for it than finger-pointing. *See* FED. R. EVID. 403 (including confusion of the issues, misleading the jury, and waste of time as grounds for excluding otherwise probative evidence).

The part of the defendants' Motion seeking to exclude evidence of the tire-slashing incident is granted.

***4. Testimony from law enforcement officers***

The fourth category of evidence that the defendants seek to exclude is any questions insinuating or any other suggestions that there is any separate standard by which to judge the testimony of members of the law enforcement community. The defendants' concern about any such questions or suggestions arises from the fact that defendants Bartolozzi and Rollins are peace officers—a Plymouth County deputy sheriff and the Remsen Police Chief, respectively—and questions that the defendants contend were put to a number of witnesses about what they thought should happen to a peace officer who

does not testify truthfully. Pick concedes that there is no separate standard by which jurors are to judge the truthfulness of testimony from law enforcement officers, but he contends that the fact that a witness is a law enforcement officer may be relevant to what knowledge that witness possessed at the time in question and, therefore, relevant to the witness's testimony.

Pick's argument that the *identity* of witnesses as law enforcement officers may be relevant simply is not responsive to the defendants' argument that there should be no questions insinuating or any other suggestions that the testimony of law enforcement officers should be judged by any *different standard* than the testimony of other witnesses. I routinely instruct the jurors—and will so instruct them in this case—that they should not give any more or less weight to a witness's testimony just because that witness is a law enforcement officer. This part of the defendants' Motion In Limine is granted to the extent that the plaintiff, his counsel, and his witnesses are expressly barred from suggesting otherwise.

***5. Evidence supporting claims based on notice, opportunity to be heard, and interference with contract***

The fifth category of evidence that the defendants seek to exclude is evidence to support additional "handbook" claims, based on "notice" and "opportunity to be heard" provisions in the employee handbook or manual and a claim of "interference with contract." The defendants point out that Pick was denied leave to amend his Complaint to add these claims. They also contend that, notwithstanding denial of leave to amend, Pick has continued to pursue these issues during discovery and the remaining pretrial process. The defendants argue that it would be unfairly prejudicial to them and confusing to the jury if Pick is allowed to offer evidence to support these claims "when they do not exist." Pick acknowledges that he was denied leave to amend his Complaint to assert what he describes as additional factual allegations in support of his claim of violation of

the employee manual and that he was denied leave to amend his Complaint to assert an "interference with contract" claim. He contends that, nevertheless, he can assert "handbook" claims based on these additional factual allegations and a claim of "interference with contract," because the defendants have "fair notice" of these claims or theories, within the meaning of Rule 8(a) of the Federal Rules of Civil Procedure. He contends that it is inappropriate to challenge or resolve these claims under the guise of a motion in limine, when they were also raised in relation to the defendants' Motion for Summary Judgment. Even if the jurors ultimately are not instructed on claims pursuant to these theories, Pick argues that evidence that the defendants did not follow their own procedures is relevant to a demonstration of "pretext" and that evidence that they interfered with his contract demonstrates motive and discriminatory intent.

To the extent that Pick is attempting to assert an "interference with contract" claim or additional theories in support of his "violation of the employment manual" claim, Pick was not granted leave to assert such claims or theories, when United States Magistrate Judge Leonard T. Strand granted him leave to file parts of his proposed Fourth Amended Complaint. *See* February 25, 2014, Order (docket no. 31), 6-8. Pick asserts that he can still pursue such claims or theories, notwithstanding Judge Strand's denial of leave to amend his Complaint to assert them, because the defendants have fair notice of those claims or theories. He is wrong.

"Notice" pleading under Rule 8(a) of the Federal Rules of Civil Procedure—even to the extent that it survived the establishment of the "plausibility" pleading requirement to survive a Rule 12(b)(6) motion to dismiss in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)—does not "trump" Rule 15 requirements for leave to amend. *See* FED. R. CIV. P. 15(a)(2) (providing that leave is required to amend before trial, other than when the amendment is "as a matter of course" pursuant to Rule 15(a)(1),

without reference to whether the pleading provides "fair notice" of the proffered amendment). As Judge Strand concluded, Pick was not entitled to assert his new cause of action for "intentional interference with his employment contract" or his new theories of "violation of the employment manual," because he failed to establish good cause for an untimely amendment, as required under Rule 15. Order (docket no. 31) at 7-8. I have also granted summary judgment in favor of the defendants on Pick's claim of wrongful termination in violation of the terms of an employment manual. *See* Summary Judgment Ruling, 43-44. These claims or theories simply are not at issue in this case.[3]

Pick stands on much better ground as to the admissibility of evidence of the defendants' failure to follow the procedures set out in the employment handbook or manual as evidence of "pretext" in support of his remaining discrimination and retaliation claims. *See, e.g., EEOC v. Product Fabricators, Inc.*, ___ F.3d ___, ___, 2014 WL 3971477, *4 (8th Cir. Aug. 15, 2014) ("'A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies. . . .'" (quoting *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)). Similarly, evidence of "interference" with his contract, of the type alleged in Count VIII of his proffered Fourth Amended Complaint (docket no. 28),[4] may be evidence of a discriminatory or

---

[3] Pick might seek to amend his Complaint during trial to assert these claims. *See* FED. R. CIV. P. 15(b). While I sincerely doubt that Pick will be able to show that the amendment would aid in presenting the merits or that the defendants would not be prejudiced, and I sincerely doubt that the issues will be tried by consent, *id.*, the question of amendment during trial plainly cannot be decided pretrial.

[4] Count VIII of the proffered Fourth Amended Complaint asserted that the "interference" included, but was not limited to, communications by defendants with Utility Board members and other city officials requesting adverse action against Pick; denying him access to documents to which other employees had access; giving him less favorable treatment than other employees received; making false and defamatory

retaliatory motive. *See, e.g., Ebersole v. Novo Nordisk, Inc.*, ___ F.3d ___, ___, 2104 WL 3361160, *5 (8th Cir. July 10, 2014) ("pretext" may be demonstrated, *inter alia*, by evidence that the employer's proffered reason has no basis in fact, that the defendant treated similarly situated employees more favorably or deviated from its policies, or that the defendant's explanation for the firing changed). Therefore, the evidence of failure to comply with the procedures in the employment manual and interference with Pick's contract is admissible, even though the separate claims based on such evidence will not be presented to the jury. A limiting instruction, if requested, explaining the purposes for which such evidence may be considered, may be appropriate to avoid any potential prejudice from such evidence. *See, e.g, United States v. Cowling*, 648 F.3d 690, 699 (8th Cir. 2011) ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted."); *United States v. Young*, 644 F.3d 757, 761 (8th Cir. 2011) (concluding that the district court did not abuse its discretion in admitting evidence for the limited purpose set forth in its instruction); *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose).

Thus, this part of the defendants' Motion In Limine is granted to the extent that Pick will be precluded from asserting separate claims or theories of recovery based on evidence of failure to comply with the procedures in the employment manual and interference with Pick's contract, but denied to the extent that Pick may present evidence of such conduct in support of his showing of "pretext."

---

statements about him; basing his termination on arbitrary and capricious reasons; and knowing that his termination was in violation of the terms of the employment manual.

### *6. Evidence that there was no "going away party"*

Finally, the defendants seek exclusion of evidence that there was no "going away party" for Pick after elimination of his position. The defendants assert that, during discovery, Pick has criticized various witnesses because there was no such party or other type of award or recognition when his position was eliminated, despite his decades of service to the City. The defendants assert that evidence that there was no "going away party" or other recognition is not probative of any issue in the case. Instead, the defendants argue that such evidence would be offered for no reason other than to generate sympathy for Pick and to bias the jurors against the defendants, so that it is unfairly prejudicial. Pick responds that the defendants' failure to make any public or private recognition of his 34 years of service to the City is inconsistent with the defendants' proffered reason for his termination, purportedly solely an economic one to eliminate his position, and that fact supports his claim of discriminatory or retaliatory intent.

Contrary to the defendants' contentions, the lack of any public or private recognition of a long-term City employee's service, if termination of that employee's services was solely based on economic considerations, is probative of animus towards that employee. This is particularly so, if there is evidence that the City routinely recognized long- or even short-term service when an employee departed. *See, e.g., Ebersole*, ___ F.3d at ___, 2104 WL 3361160 at *5 ("pretext" may be demonstrated, inter alia, by evidence that the defendant treated similarly situated employees more favorably or deviated from its policies). Nor can I say that evidence of *the fact* that there was no such recognition is unduly prejudicial or likely to inflame undue sympathy for Pick, such that it is unduly prejudicial. *Compare* FED. R. EVID. 403, Advisory Committee Notes (explaining that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one"); *see also Jiminez*, 487 F.3d at 1145 (quoting this note); *Dierling*, 131 F.3d at 730-31 (considering whether evidence was unfairly

prejudicial, because it might lead to a decision on an improper basis, where it purportedly had no connection to the charged offense and revealed grisly or violent behavior that made the defendant appear "dangerous"). Reasonable limits on any such evidence are better determined at trial, when such evidence is presented in context.

Therefore, this last part of the defendants' Motion In Limine is denied.

## *III. CONCLUSION*

Upon the foregoing,

1. Plaintiff Pick's July 3, 2014, First Motion In Limine (docket no. 58), seeking exclusion of evidence that he is receiving or the amount that he is receiving in Iowa Public Employee's Retirement System (IPERS) payments, is **granted**, *on the condition that* he excludes from any claim for back pay any unpaid contributions to IPERS that the City has not paid since Pick's discharge;

2. The defendants' August 12, 2014, Motion In Limine (docket no. 63) is **granted in part and denied in part**, as follows:

a. That part of the defendants' Motion seeking exclusion of evidence of settlements is **granted**, and, to the extent that Pick might otherwise be allowed to offer his attorney's June 26, 2012, letter into evidence, Pick must redact it to exclude or hide the last paragraph inviting discussions of a separation package;

b. That part of the defendants' Motion seeking exclusion of evidence that the defendants are insured by EMC Insurance Companies and that EMC is affording the defendants a defense in this case is **granted**;

c. That part of the defendants' Motion seeking exclusion of evidence of an incident in which someone slashed the tires of Pick's vehicle shortly after he filed this lawsuit is **granted**;

d. That part of the defendants' Motion seeking exclusion of any questions insinuating or any other suggestions that there is any separate standard by which to judge the testimony of members of the law enforcement community is **granted** to the extent that the plaintiff, his counsel, and his witnesses are expressly barred from suggesting that there is any such separate standard;

e. That part of the defendants' Motion seeking exclusion of evidence to support additional "handbook" claims or theories of recovery, based on "notice" and "opportunity to be heard" provisions in the employee handbook or manual, and a claim of "interference with contract" is **granted** to the extent that Pick will be precluded from asserting separate claims or theories of recovery based on evidence of failure to comply with the procedures in the employment manual and interference with Pick's contract, but **denied** to the extent that Pick may present evidence of such conduct in support of his showing of "pretext"; and

f. That part of the defendants' Motion seeking exclusion of evidence that there was no "going away party" for Pick after elimination of his position is **denied**.

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about challenged evidence, this ruling shall be sealed until ten days after completion of the trial or notice of any settlement, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED**.

**DATED** this 2nd day of September, 2014.

Mark W. Bennett

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA