# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

STEVE PICK,

      Plaintiff,

vs.

CITY OF REMSEN, PAIGE LIST,
RACHAEL KEFFELER, JEFF
CLUCK, CRAIG BARTOLOZZI, and
KIM KELEHER,

      Defendants.

No. C 13-4041-MWB


**COURT'S PROPOSED
INSTRUCTIONS
TO THE JURY**
(09/10/14 "ANNOTATED"
VERSION)

_____

## TABLE OF CONTENTS

**INSTRUCTIONS**

No. 1 — INTRODUCTION ....................................................... 1
No. 2 — BURDEN OF PROOF ................................................. 3
No. 3 — DEFINITION OF EVIDENCE...................................... 5
No. 4 — TESTIMONY OF WITNESSES ..................................... 9
No. 5 — DISABILITY DISCRIMINATION CLAIM ..................... 11
No. 6 — FIRST AMENDMENT RETALIATION CLAIM .............. 17
No. 7 — INTENTIONAL INFLICTION OF EMOTIONAL
        DISTRESS CLAIM .................................................. 21
No. 8 — DAMAGES IN GENERAL......................................... 24
No. 9 — COMPENSATORY DAMAGES .................................. 26
No. 10 — PUNITIVE DAMAGES ............................................. 29
No. 11 — OUTLINE OF THE TRIAL ....................................... 34
No. 12 — OBJECTIONS ......................................................... 36
No. 13 — BENCH CONFERENCES ......................................... 37
No. 14 — NOTE-TAKING ...................................................... 38
No. 15 — CONDUCT OF JURORS DURING TRIAL..................... 39
No. 16 — DELIBERATIONS ................................................... 42

**VERDICT FORM**

# No. 1 — INTRODUCTION[1]

Congratulations on your selection as a juror!

These Instructions are to help you better understand the trial and your role in it.

As I explained during jury selection, this is an action by plaintiff Steve Pick, the former long-time Utilities Director of the Remsen Municipal Utility, against defendants City of Remsen, Paige List, Rachael Keffeler, Jeff Cluck, Craig Bartolozzi, and Kim Keleher.[2] I will refer to the City of Remsen and the other defendants collectively as "the defendants." When necessary, I will refer to the City of Remsen as "the City." Mr. Pick asserts various claims relating to his request for accommodation for his alleged disability and his termination when his position was allegedly "eliminated" by the City's utilities board.

The defendants deny Mr. Pick's claims and assert certain specific defenses.

You have been chosen and sworn as jurors to try the issues of fact related to Mr. Pick's claims and the defendants' defenses. In making your decisions, you are the sole judges of the facts. You must not decide this case based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or biases. The law demands that you return a just verdict, based solely on the evidence, your individual evaluation of that evidence, your reason and common

---

[1] My current "plain language" stock Jury Instructions. *Compare* 8th Cir. Model 1.03 (2013).

[2] The parties' Joint Proposed Jury Instructions also referred to Kevin Rollins. However, because the only claim against Rollins was dismissed on summary judgment, I have not included him in these instructions.

1

sense, and these Instructions.[3]  Do not take anything that I have said or done or that I may say or do as indicating what I think of the evidence or what I think your verdict should be.[4]

You should consider and decide this case as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  However, the City can act only through its agents or employees, and any agent or employee of the City may bind it by acts and statements made while acting within the scope of the authority delegated to the agent by the City, or within the scope of his or her duties as an employee of the City.[5]

Also, please remember that this case is important to the parties and to the fair administration of justice.  Therefore, please be patient, consider all of the evidence, and do not be in a hurry to reach a verdict just to be finished with the case.

In these Instructions, I will explain how you are to determine whether or not the parties have proved their claims or defenses.  First, however, I will explain some preliminary matters, including the burden of proof, what is evidence, and how you are to treat the testimony of witnesses.

---

[3] My stock first instruction on "implicit bias."  *Compare* 8th Cir. Model 1.03 (2013) (penultimate paragraph); 9th Cir. Model 1.1B, unnumbered ¶ 3.

[4] *See* 8th Cir. Civil Model 1.03 (2013) (last paragraph).

[5] *See* 8th Cir. Model 9.01 (2013); *compare* Joint Proposed Jury Instruction at 19.

2

## No. 2 — BURDEN OF PROOF[6]

Your verdict depends on what facts have been proved. Unless I tell you otherwise, facts must be proved "by the greater weight of the evidence."[7] This burden of proof is sometimes called "the preponderance of the evidence."

"Proof by the greater weight of the evidence" is proof that a fact is more likely true than not true.

- It does not depend on which side presented the greater number of witnesses or exhibits

- It requires you to consider all of the evidence and decide which evidence is more convincing or believable

  - For example, you may choose to believe the testimony of one witness, if you find that witness to be convincing, even if a number of other witnesses contradict that witness's testimony

  - You are free to disbelieve any testimony or other evidence that you do not find convincing or believable

- If, on any issue in the case, you find that the evidence is equally balanced, then you cannot find that the issue has been proved

---

[6] My "plain language" stock Jury Instructions. *See* 8th Cir. Model 3.04 (2013).

[7] Because I have indicated that "the greater weight of the evidence" standard applies "[u]nless I tell you otherwise," this instruction leaves open the possibility that certain matters may have a different burden of proof.

3

You may have heard that criminal charges require "proof beyond a reasonable doubt." That is a stricter standard that does not apply in a civil case, such as this one.

# No. 3 — DEFINITION OF EVIDENCE[8]

Evidence *is*

- Testimony

  - Testimony may be either "live" or "by deposition"

  - A "deposition" is testimony taken under oath before the trial and preserved in writing or on video

  - Consider "deposition" testimony as if it had been given in court[9]

- Answers to interrogatories

  - An interrogatory is a written question asked before trial by one party of another, who must answer it under oath in writing

  - Consider interrogatories and the answers to them as if the questions had been asked and answered here in court[10]

- Exhibits admitted into evidence

  - Just because an exhibit may be shown to you does not mean that it is more important than any other evidence

- Stipulations

  - Stipulations are agreements between the parties

---

[8] My "plain language" Jury Instructions. *See* 8th Cir. Model 1.04 (2013).

[9] *See* 8th Cir. Model 2.14 (2013).

[10] *See* Iowa Civil Jury Instruction No. 100.6.

- If the parties stipulate that certain facts are true, then you must treat those facts as having been proved[11]

Evidence *is not*

- Testimony that I tell you to disregard

- Exhibits that are not admitted into evidence

- Statements, arguments, questions, and comments by the lawyers

- Objections and rulings on objections

- Anything that you see or hear about this case outside the courtroom

### *Charts and summaries*

Some exhibits consisting of charts and summaries may be shown to you in order to help explain the facts disclosed by books, records, or other underlying evidence in the case.

- Such summary exhibits are not evidence or proof of any facts

- They are used for convenience

- In deciding how much weight to give summaries, you must

  - decide if they correctly reflect the facts shown by the evidence

---

[11] *See* 8th Cir. Model 2.03 (2013). Unless stipulations are expressly identified with reference to particular elements of claims or defenses, the parties are responsible for entering stipulations into evidence.

6

- consider testimony about the way in which the summaries were prepared[12]

### *"Direct" and "circumstantial" evidence*

You may have heard of "direct" or "circumstantial" evidence.

- "Direct" evidence is direct proof of a fact
    - An example is testimony by a witness about what that witness personally saw or heard or did
- "Circumstantial" evidence is proof of one or more facts from which you could find another fact
    - An example is testimony that a witness personally saw a broken window and a brick on the floor from which you could find that the brick broke the window
- You should consider both kinds of evidence, because the law makes no distinction between their weight[13]

### *Evidence admitted for a limited purpose*

Some evidence may be admitted only for a limited purpose.

- I will tell you if that happens

---

[12] *See* 8th Cir. Civil Models 2.11 and 2.12 (2013) and the parties' requested model instructions.

[13] *See* 9th Cir. Criminal Model 1.9 (modified); *but see* 8th Cir. Criminal Model 1.04 (2013) (suggesting that definitions of direct and circumstantial evidence are ordinarily not required).

7

- I will instruct you on the purposes for which the evidence can and cannot be used[14]

### *Weight of evidence*

The weight to be given any evidence—whether that evidence is "direct" or "circumstantial," or in the form of testimony, an exhibit, or a stipulation—is for you to decide.[15]

---

[14] *See* 8th Cir. Model 2.09 (2013).

[15] *See* 9th Cir. Model 1.9 (modified), *and compare* 8th Cir. Model 1.02 (2012) (last unnumbered paragraph).

## No. 4  — TESTIMONY OF WITNESSES[16]

You may believe all of what any witness says, only part of it, or none of it. In evaluating a witness's testimony, consider the following:

- the witness's
  - intelligence
  - memory
  - opportunity to have seen and heard what happened
  - motives for testifying
  - interest in the outcome of the case
  - manner while testifying
  - drug or alcohol use or addiction, if any
- the reasonableness of the witness's testimony
- any differences between what the witness says now and said earlier
- any inconsistencies between the witness's testimony and any other evidence that you believe
- whether any inconsistencies are the result of seeing or hearing things differently, actually forgetting things, or innocent mistakes, or are, instead, the result of lies or phony memory lapses

---

[16] My "stock" Jury Instructions.  *See* 8th Cir. Models 1.03 (2013) (unnumbered ¶¶ 5-6); id. 3.03.  For some time, I have not given separate instructions on "testimony" and "credibility."

- whether the witness has been convicted of a felony offense, but only to help you decide whether to believe that witness and how much weight to give his or her testimony,[17] and

- any other factors that you find bear on believability or credibility

It is your exclusive right to give any witness's testimony whatever weight you think it deserves.[18]

---

[17] *See* 8th Cir. Civil Model 2.10 (2013).

[18] *See* 8th Cir. Civil Model 3.07 (2013) ("*Allen*" charge, stating, "You are, instead, judges—judges of the facts; judges of the believability of the witnesses; and judges of the weight of the evidence.").

Case 5:13-cv-04041-MWB   Document 72-1   Filed 09/10/14   Page 11 of 50

## No. 5 — DISABILITY DISCRIMINATION CLAIM[19]

Mr. Pick's first claim is that the City discriminated against him because of his disability. The City denies this claim.

To win on his disability discrimination claim, Mr. Pick must prove all of the following elements by the greater weight of the evidence:

*One*, **Mr. Pick suffered from depression and/or an anxiety disorder.**

*Two*, **the depression and/or anxiety disorder substantially limited one or more of his major life activities.**

Mr. Pick alleges that he is substantially limited in the following major life activities:

- sleeping
- concentrating
- thinking
- communicating
- working
- interacting with others

---

[19]*See* 8th Cir. Model 9.40 (2013). The defendants assert that the only proper defendants on this claim are the two individuals, Bartolozzi and Keleher, while plaintiff Pick asserts that Bartolozzi, Keleher, and the City should all be named. Both are wrong. Federal circuit courts of appeals, including the Eighth Circuit Court of Appeals, have held that there is no individual liability under the ADA. *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999); *see also Roman–Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 50–52 (1st Cir. 2011); *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010); *Spiegel v. Schulmann*, 604 F.3d 72, 79–80 (2d Cir. 2010); *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007). Accordingly, the City is the sole defendant in this instruction.

In determining whether Mr. Pick's impairment substantially limits one or more of Mr. Pick's major life activities, you should compare Mr. Pick's ability to engage in a particular major life activity with that of the average person. In doing so, you may consider

- the conditions under which Mr. Pick engages in a particular major life activity

- the manner in which Mr. Pick engages in a particular major life activity

- the length of time it takes Mr. Pick to perform a particular major life activity

Temporary impairments with little or no long-term impact are not sufficient. It is not the name of the impairment or a condition that matters, but rather the effect of an impairment or condition on the life of a particular person.

**Three,** **Mr. Pick could have continued to perform the essential functions of his job as Utilities Director with or without reasonable accommodation.**

"Essential functions"

- are the fundamental job duties of the employment position that Mr. Pick holds

- do not include the marginal functions of the position

In determining whether a job function is "essential," you should consider the following factors:

- the City's judgment as to which functions of the job are essential

- written job descriptions

12

- the amount of time spent on the job performing the function in question

- consequences of not requiring the person to perform the function

- the work experience of persons who have held the job

- the current work experience of persons in similar jobs

- whether the reason the position exists is to perform the function

- whether there are a limited number of employees available among whom the performance of the function can be distributed

- whether the function is highly specialized and the individual in the position was hired for his expertise or ability to perform the function

No one factor is necessarily controlling. You should consider all of the evidence in deciding whether a job function is essential.

"Accommodation" means

- making modifications to the work place that

  - allow a person with a disability to perform the essential functions of the job

  - allow a person with a disability to enjoy the same benefits and privileges as an employee without a disability

13

A "reasonable" accommodation

- is one that is possible

- is one that could reasonably be made under the circumstances

- may include, but is not limited to, permitting an employee to take time off for treatment or recovery related to a disability

If Mr. Pick shows that an accommodation is possible, the burden shifts to the City to show that the accommodation would create an undue hardship.

"Undue hardship" means an action requiring the City to incur significant difficulty or expense when considered in light of the following:

- the nature and cost of the specific accommodation

- the overall financial resources of the City's Municipal Utility, the number of persons employed at the City's Municipal Utility, and the effect on expenses and resources

- the overall financial resources of the City

- the overall size of the City with respect to the number of its employees and the number, type, and location of its facilities

- the City's operation, including the composition, structure, and functions of its workforce

- the impact of a specific accommodation on the operation of the City's Municipal Utility, including

14

- the impact on the ability of other employees to perform their duties

- the impact on the City's Municipal Utility to conduct business

***Four***, the City knew of Mr. Pick's depression and/or anxiety disorder before it eliminated Mr. Pick's position as Utilities Director.

***Five***, the City eliminated Mr. Pick's position as Utilities Director.

Mr. Pick alleges that the City acted through Utility Board members Craig Bartolozzi and Kim Keleher.

***Six***, Mr. Pick's (a) depression and/or anxiety disorder, or (b) his request for leave was a motivating factor in the City's decision to eliminate Mr. Pick's position as Utilities Director.[20]

A "motivating factor," is

- one that played a part or a role in the City's decision to eliminate Mr. Pick's position

- it need not have been the only reason for the City's decision to eliminate Mr. Pick's position

You must unanimously agree which one or more of the following, if any, was a motivating factor for Mr. Pick's dismissal: Mr. Pick's (a) depression and/or anxiety disorder, or (b) his request for leave, or (c) both.

You cannot find that the "motivating factor" element has been proved simply because you disagree

---

[20]Plaintiff Pick's failure to accommodate, disability discrimination, and disability retaliation claims have been merged into one instruction in which the jury will be asked to identify the City's motivating factor for its decision to eliminate Pick's position.

15

with the City's decision to eliminate Mr. Pick's position
or think that that decision was harsh or unreasonable.

If any of these elements has not been proven as to the City, your verdict must be for the City. If you find in favor of Mr. Pick on his disability discrimination claim, then you must also consider whether the City has proved, by the greater weight of the evidence, its "same decision" defense.

**Same decision defense**

To prove their "same decision" defense, the City must prove the following by the greater weight of the evidence:

**The City would have eliminated Mr. Pick's position as Utilities Director regardless of his disability.**

The City contends that it eliminated Mr. Pick's position as Utilities Director because it determined that it did not need the expense of a Utilities Director. The City contends that it would have eliminated Mr. Pick's position for this reason regardless of his disability.

**You need not be concerned with the effect of your determination on this "same decision" question; the effect of your determination on this question is for me to decide.[21]**

_____

[21] *See* 8th Cir. Model 9.10 (2013).

16

## No. 6 — FIRST AMENDMENT RETALIATION CLAIM

**Liability of the individual defendants**

Mr. Pick's second claim is that two individual defendants, Craig Bartolozzi Kim Keleher, and a municipal defendant, the City, violated his First Amendment rights by retaliating against him for threatening to file a lawsuit against the City and its employees to enforce his rights. To win on his First Amendment retaliation claim against a particular individual defendant, Craig Bartolozzi or Kim Keleher, Mr. Pick must prove the following elements:

*One*, **Mr. Pick informed the City that he was considering filing a lawsuit against it and its employees to enforce his rights.**

*Two,* **the particular individual defendant eliminated Mr. Pick's position as Utilities Director.**

*Three*, **Mr. Pick's act of informing the City that he was considering filing a lawsuit against it and its employees to enforce his rights was a motivating factor in that particular individual defendant's decision to eliminate Mr. Pick's position as Utilities Director**.

A "motivating factor"

- is a factor that played a part or a role in a particular individual defendant's decision to eliminate Mr. Pick's position

- need not have been the only reason for a particular individual defendant's decision to eliminate Mr. Pick's position

17

> You cannot find that the "motivating factor" element has been proved simply because you disagree with a particular individual defendant's decision to eliminate Mr. Pick's position or think that the decision was harsh or unreasonable.

If any of these elements has not been proven as to a particular individual defendant, your verdict must be for that particular individual defendant.

If you find in favor of Mr. Pick on his First Amendment retaliation claim against either particular individual defendant, then you must also consider whether that particular individual defendant has proved, by the greater weight of the evidence, his or her "same decision" defense.

**Same decision defense**

To prove the "same decision" defense, a particular individual defendant must prove the following by the greater weight of the evidence:

**The particular individual defendant in question would have eliminated Mr. Pick's position as Utilities Director regardless of his threat of filing a lawsuit.**

> These defendants, Bartolozzi and Keleher, contend that they eliminated Mr. Pick's position as Utilities Director because they determined that the City did not need the expense of a Utilities Director. These defendants contend that they would have eliminated Mr. Pick's position for this reason regardless of Mr. Pick's threat of filing a lawsuit.

You need not be concerned with the effect of your determination on this "same decision" question; the effect of your determination on this question is for me to decide.

**If you find that either Craig Bartolozzi or Kim Keleher has not proved the same decision defense, then you must also consider whether the City is liable for that defendant's actions.**

### Liability of the City

On Mr. Pick's First Amendment retaliation claim, a municipality, such as the City, may be held liable for the actions of its agents or officers, defendants Keleher and Bartolozzi, if the agent or officer's violation of Mr. Pick's civil rights occurred as a direct result of a municipal policy, custom, or practice. Therefore, in order for Mr. Pick to prevail on a "First Amendment retaliation" claim against the City, Mr. Pick must prove the following two essential elements by the greater weight of the evidence:

***One*, Mr. Pick was deprived of his civil rights by either or both defendants Keleher and Bartolozzi.**

> You may find that this element has been proved only if you first find in favor of Mr. Pick on his claim of "First Amendment retaliation" against either or both defendants Keleher and/or Bartolozzi.

***Two*, the improper actions of the individual defendant in question were a result of a policy, custom, or practice of the City.**

> Mr. Pick may establish municipal liability for a violation of his civil rights by proving that his civil rights were violated by an action pursuant to "official municipal policy" or misconduct so pervasive among non-policymaking employees of the municipality as to constitute a "custom or usage" with the force of law.

- "Official municipal policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish municipal policy

- Alternatively, "custom or usage" is demonstrated by proof of the following:

  - the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the municipality's employees;

  - deliberate indifference to or tacit authorization of such conduct by the municipality's policymaking officials after notice to the officials of that misconduct; *and*

  - the custom was the motivating factor behind the violation of the plaintiff's civil rights

**If Mr. Pick has failed to prove both of these elements of municipal liability by the greater weight of the evidence as to a particular individual defendant, then you cannot hold the City liable for that particular individual's First Amendment retaliation. However, if you find that Mr. Pick has proved both of these elements of municipal liability by the greater weight of the evidence as to one or both individual defendants, then you may hold the City liable on Mr. Pick's First Amendment retaliation claim.**

## No. 7 — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM[22]

Mr. Pick's third claim is against defendants Paige List, Rachael Keffeler, Jeff Cluck, Craig Bartolozzi, and Kim Keleher for "intentional infliction of emotional distress."

To win on his claim of "intentional infliction of emotional distress" against a particular defendant, Mr. Pick must prove all of the following elements by the greater weight of the evidence:

*One*, **a particular individual defendant's conduct toward Mr. Pick was outrageous.**

> "Outrageous conduct" means conduct so extreme as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Outrageous conduct does not extend to
>
> - mere insults
> - indignities
> - threats
> - annoyances
> - petty oppressions
> - hurt feelings
> - bad manners

---

[22]*See* Iowa Civil Jury Instruction Nos. 2000.1-2000.4. As is my practice, I have incorporated the definitional language found in Iowa Civil Jury Instruction Nos. 2000.2-2000.4 into the elements instruction.

21

- other trivialities which a reasonable person could be expected to endure

All persons must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are inconsiderate and unkind.

**_Two_, a particular individual defendant intentionally caused Mr. Pick emotional distress or acted with reckless disregard of the probability that his or her actions would cause Mr. Pick emotional distress.**

A person intends to inflict emotional distress when that person

- wants to cause distress, or

- knows such distress is substantially certain to result from the person's conduct

A person's conduct is reckless

- if the person knows or has reason to know that the conduct creates a high degree of probability that emotional distress will result, *and*

- the person acts with deliberate disregard of that probability

**_Three_, Mr. Pick suffered severe or extreme emotional distress**.

The emotional distress

- must in fact exist, and

- must be severe or extreme, but

- need not reveal itself physically

"Emotional distress" includes all highly unpleasant mental reactions such as

22

- fright

- horror

- grief

- shame

- humiliation

- embarrassment

- anger

- chagrin

- disappointment

- worry

"Severe or extreme" means substantial or enduring as distinguished from mild or brief. It must be so substantial or enduring that no reasonable person could be expected to bear it.

**Four**, a particular individual defendant's outrageous conduct was a cause of Mr. Pick's emotional distress.

**Five**, Mr. Pick suffered damages in some amount.

If Mr. Pick has failed to prove all of the elements of this claim by the greater weight of the evidence against a particular individual defendant, then your verdict must be for that particular individual defendant on Mr. Pick's claim of "intentional infliction of emotional distress."

23

## No. 8 — DAMAGES IN GENERAL[23]

It is my duty to instruct you about the measure of damages. By instructing you on damages, I do not mean to suggest what your verdict should be on any claim.

If you find for Mr. Pick on any of his claims, you must determine what damages to award. "Damages" are the amount of money that will reasonably and fairly compensate Mr. Pick for any injury that you find he suffered as a result of the defendants' wrongful conduct

- It is for you to determine what damages, if any, have been proved

- Any damages award must be based upon evidence and not upon speculation, guesswork, or conjecture

- The amount of money to be awarded for certain items of damages cannot be proved in a precise dollar amount

  - The law leaves such amount to your sound judgment

  - You must base your determination of the amount of such damages on the evidence presented

- You cannot determine the amount for a particular item of damages by taking down each juror's estimate and agreeing in advance that the average of those estimates will be your award for that item of damages

---

[23] My stock instruction, modified for this case. *See* 8th Cir. Model 5.02A (2013).

- You must not award duplicate damages, so do not allow amounts awarded under one item of damages to be included in any amount awarded under another item of damages

## No. 9 — COMPENSATORY DAMAGES[24]

Mr. Pick seeks the following kinds of "compensatory" or "actual" damages:

"*Emotional distress damages*"

- Damages for "emotional distress" are the amount of damages that will reasonably compensate the plaintiff for the following:

    - emotional pain

    - suffering

    - inconvenience

    - mental anguish

    - fear

    - humiliation

    - anger

    - sadness

    - physical distress, and

    - loss of enjoyment of life

    **that were caused by the wrongful conduct of the defendants at issue, from the time of the wrongful conduct until the time that you give your verdict.**

---

[24] *See* 8th Cir. Model 5.02A (2013). I have not included either of the parties' proposed instructions on physical and mental pain and suffering because I am unware of any allegation of physical injury suffered by Mr. Pick as a result of defendants' actions. Any mental pain and suffering allegedly suffered by Mr. Pick is fully covered by my proposed instruction on emotional distress damages.

- You may also award future emotional distress damages, if you find that Mr. Pick's emotional distress caused by the wrongful conduct of the defendants at issue is reasonably certain to continue in the future

- The amount, if any, that you award for emotional distress cannot be measured by an exact or mathematical standard
  - does not require the introduction of evidence of monetary value of such damages
  - must be based on your sound judgment and impartial consideration of the evidence

- Mr. Pick is entitled to recover emotional distress damages caused by aggravation of pre-existing emotional problems, if
  - he had emotional problems before the defendants' wrongful conduct, and
  - those problems were aggravated by the defendants' wrongful conduct, causing further suffering

  **Mr. Pick is not entitled to recover for any emotional problems that existed before the defendants' wrongful conduct or for any emotional problems that he now has that were not caused by the defendants' wrongful conduct**

- The amount of emotional distress damages, if any, that you award for each claim may be the same or different, but the damages awarded must reflect the amount of emotional distress caused to Mr. Pick by the wrongful conduct at issue in that claim

27

***"Backpay"***

- Damages for "backpay" are the amount of wages and benefits that Mr. Pick lost because of the defendants' wrongful conduct

- "Backpay" is calculated as follows:

  - Determine the amount of any wages and the value of fringe benefits that Mr. Pick would have earned from employment with the City from the date of his termination until the date of your verdict, *then*

  - Subtract the amount of the wages and the value of fringe benefits, if any, that Mr. Pick actually did earn during that time from other employment after his job was eliminated with the City

- You may award "backpay" damages on a claim, other than Mr. Pick's intentional infliction of emotional distress claim, on which Mr. Pick prevails, if you find that such damages are a direct result of the wrongful conduct alleged in that claim. However, Mr. Pick can recover only one award of "backpay" damages, even if he prevails on more than one his claims. I will limit his recovery to one award of "backpay" damages

- You may *not* award "backpay" damages on Mr. Pick's intentional infliction of emotional distress claim

## No. 10 — PUNITIVE DAMAGES

In addition to compensatory damages described in Instruction No. 9, the law permits, but does not require, the jury, under certain circumstances, to award punitive damages. If you find that Mr. Pick has proved one or more of his claims, then you must consider what, if any, punitive damages you should award on that claim or those claims. On such claims, whether or not to award punitive damages and the amount of any punitive damages are for you to decide. However, the law in this area does not permit an award of punitive damages against a municipality, such as the City, for a violation of constitutional rights by one of its officers/agents. Therefore, you may award punitive damages, if at all, on Mr. Pick's "First Amendment retaliation" claim only against individual defendants, Keleher and Bartolozzi.

Punitive damages are not intended to compensate for injury. You should consider Mr. Pick to be made whole for his injuries by the "compensatory damages," if any, that you may award under Instruction No. 9. Consequently, you should only award punitive damages, if additional damages are appropriate to punish the defendant in question and to discourage that defendant and others from like conduct in the future.

**To get punitive damages, Mr. Pick must prove the following by the greater weight of the evidence:**

*One,* **punitive damages should be awarded.**

> You must use different standards to decide whether or not to award punitive damages on the "intentional infliction of emotional distress" claim under Iowa law,

on the one hand, and on the others claims under Federal law, on the other.

- You may award punitive damages on the *"intentional infliction of emotional distress" claim* under Iowa law only if you find both of the following by clear, convincing, and satisfactory evidence:

    - The defendant acted in willful and wanton disregard of the rights or safety of another. This means that he did an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow

    and
    - The defendant's actions caused injury to Pick

- You may award punitive damages on the *"disability discriminatin" claim* or the *"First Amendment retaliation"* claim under Federal law only if the defendant acted

    - with malice, which is an evil motive or intent

    or
    - with reckless indifference to Mr. Pick's federally protected First Amendment rights

In deciding whether to award punitive damages on these claim, you should also consider whether the defendant's conduct was reprehensible. To decide

whether conduct was "reprehensible," you may consider the following:

- whether the harm suffered by Mr. Pick was physical or economic or both

- whether there was violence, intentional malice, or reckless disregard for human health or safety

- whether the defendant's conduct that harmed Mr. Pick also caused harm or posed a risk of harm to others

- whether there was any repetition of the wrongful conduct and past conduct of the sort that harmed Pick

***Two,* the amount of punitive damages**[25]

You must determine the amount, if any, of punitive damages that is warranted by the defendant's wrongful conduct. In determining the amount of punitive damages, if any, to award, you should consider

- how much harm the defendant's wrongful conduct caused Mr. Pick

- what amount is needed, considering the defendant's financial condition, to punish the defendant for its wrongful conduct toward Mr. Pick and to prevent a repetition of that wrongful conduct in the future

---

[25] I conclude that, while the federal and Iowa claims involve different standards for the award of punitive damages, they use similar standards to determine the amount of punitive damages. *Compare* 8th Cir. Model 13.72 with Iowa Civil Jury Instruction 210.1.

31

- whether the amount of punitive damages bears a reasonable relationship to the actual damages awarded on Mr. Pick's claim;

- what sum is sufficient to deter other similar employers from similar wrongful conduct in the future

Again, whether or not to award punitive damages, and the amount of such punitive damages, are for you to decide.

**If Pick has proved any of his claims, you may, but do not have to, award punitive damages.**

- You may award punitive damages on any claims in the same or different amounts

- Punitive damages on one claim cannot be included in punitive damages on another claim

- You must indicate the total amount of punitive damages, if any, on all claims that you intend to award

**Conduct directed specifically at Mr. Pick**

In addition, if you award Mr. Pick punitive damages against any defendant on Mr. Pick's "intentional infliction of emotional distress" claim, then you will be asked to answer the following question in the Verdict Form:

Was the wrongful conduct of the defendant in question relating to the "intentional infliction of emotional distress" claim directed specifically at Mr. Pick?

32

> The wrongful conduct was not "directed specifically at" Mr. Pick, if the defendant's conduct would have been the same if a different plaintiff were involved.[26]

You need not be concerned with the effect of your determination on this question, because the effect of your determination on this question is for me to decide.

---

[26] I have long decried the failure of the Iowa Supreme Court to explain or fully analyze its interpretation of IOWA CODE § 668A.1(1)(b), requiring this inquiry. *See Chadima v. National Fidelity Life Ins. Co.*, 894 F. Supp. 1300, 1304-09 (N.D. Iowa 1995). Unfortunately, it appears that the Iowa Supreme Court still has not done so. I have used this "different plaintiff" test with considerable reluctance, because I do not believe that is in accord with the plain meaning of the language of IOWA CODE § 668A.1(1)(b). *Id.* It is, however, the state court's responsibility to interpret state statutes, and I believe that this is the test called for by existing Iowa case law. *Id.* I also have considerable doubt that there is any question that a wrongful discharge or retaliatory action was directed specifically at the person discharged or retaliated against, but I believe that the inquiry is required by the statute absent a stipulation by the parties, even though the parties have omitted it from their Joint Proposed Jury Instructions and separate proposed verdict forms.

33

## No. 11 — OUTLINE OF THE TRIAL[27]

I will now explain how the trial will proceed.

After I have read all but the last Instruction,

- The lawyers may make opening statements
    - An opening statement is not evidence
    - It is simply a summary of what the lawyer expects the evidence to be
- Mr. Pick will present evidence and call witnesses and the lawyer for the defendants may cross-examine them
- The defendants may present evidence and call witnesses, and Mr. Pick's lawyer may cross-examine those witnesses
- The parties will make their closing arguments
    - Closing arguments summarize and interpret the evidence for you
    - Like opening statements, closing arguments are not evidence
- I will give you the last Instruction, on "deliberations"
- You will retire to deliberate on your verdict

---

[27] My "stock" Jury Instructions. *See* 8th Cir. Model 1.02, numbered ¶ 3.

- You will indicate your verdict on Mr. Pick's claims in a Verdict Form, a copy of which is attached to these Instructions

  - A Verdict Form is simply a written notice of your decision

  - When you have reached a unanimous verdict, your foreperson will complete one copy of the Verdict Form by marking the appropriate blank or blanks for each question

  - You will all sign that copy to indicate that you agree with the verdict and that it is unanimous

  - Your foreperson will then bring the signed Verdict Form to the courtroom when it is time to announce your verdict

## No. 12 — OBJECTIONS[28]

The lawyers may make objections and motions during the trial that I must rule upon.

- If I sustain an objection to a question before it is answered, do not draw any inferences or conclusions from the question itself

- Do not hold it against a lawyer or a party that a lawyer has made an objection, because lawyers have a duty to object to testimony or other evidence that they believe is not properly admissible

---

[28] My "stock" Jury Instructions. *See* 8th Cir. Model 1.02.

36

## No. 13 — BENCH CONFERENCES[29]

During the trial, it may be necessary for me to talk with the lawyers out of your hearing.

- I may hold a bench conference while you are in the courtroom or call a recess

- Please be patient, because these conferences are

  - to decide how certain evidence is to be treated

  - to avoid confusion and error, and

  - to save your valuable time

- We will do our best to keep such conferences short and infrequent

---

[29] My "stock" Jury Instructions. *See* 8th Cir. Model 1.03.

## No. 14 — NOTE-TAKING[30]

You are allowed to take notes during the trial if you want to.

- Be sure that your note-taking does not interfere with listening to and considering all the evidence

- Your notes are not necessarily more reliable than your memory or another juror's notes or memory

- Do not discuss your notes with anyone before you begin your deliberations

- Leave your notes on your chair during recesses and at the end of the day

- At the end of trial, you may take your notes with you or leave them to be destroyed

- No one else will ever be allowed to read your notes, unless you let them

If you choose not to take notes, remember that it is your own individual responsibility to listen carefully to the evidence.

An official court reporter is making a record of the trial, but her transcripts will not be available for your use during your deliberations.

---

[30] My "stock" Jury Instructions. *See* 8th Cir. Model 1.05.

## No. 15 — CONDUCT OF JURORS DURING TRIAL[31]

You must decide this case ***solely*** on the evidence and your own observations, experiences, reason, common sense, and the law in these Instructions. You must also keep to yourself any information that you learn in court until it is time to discuss this case with your fellow jurors during deliberations.

To ensure fairness, you must obey the following rules:

- Do not talk among yourselves about this case, or about anyone involved with it, until you go to the jury room to decide on your verdict.

- Do not talk with anyone else about this case, or about anyone involved with it, until the trial is over.

- When you are outside the courtroom, do not let anyone ask you about or tell you anything about this case, anyone involved with it, any news story, rumor, or gossip about it, until the trial is over. If someone should try to talk to you about this case during the trial, please report it to me.

- During the trial, you should not talk to any of the parties, lawyers, or witnesses—even to pass the time of day—so that there is no reason to be suspicious about your fairness. The lawyers, parties, and witnesses are not supposed to talk to you, either.

---

[31] My "stock" Jury Instructions. *See* 8th Cir. Model 1.05 (2013).

- You may need to tell your family, friends, teachers, co-workers, or employer about your participation in this trial, so that you can tell them when you must be in court and warn them not to ask you or talk to you about the case. However, do not provide any information to anyone by any means about this case until after I have accepted your verdict. That means do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, a Blackberry, a PDA, a computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, any blog, or any website such as Facebook, MySpace, YouTube, or Twitter, to communicate to anyone any information about this case until I accept your verdict.

- Do not do any research—on the Internet, in libraries, in the newspapers, in dictionaries or other reference books, or in any other way—or make any investigation about this case, the law, or the people involved on your own.

- Do not visit or view any place discussed in this case and do not use Internet maps or Google Earth or any other program or device to search for or to view any place discussed in the testimony.

- Do not read any news stories or articles, in print, on the Internet, or in any "blog," about this case, or about anyone involved with it, or listen to any radio or television reports about it or about anyone involved with it, or let anyone tell you anything about any such news reports. I assure you that when you have heard all the evidence, you

40

will know more about this case than anyone will learn through the news media—and it will be more accurate.

- Do not make up your mind during the trial about what the verdict should be. Keep an open mind until you have had a chance to discuss the evidence with other jurors during deliberations.

- Do not decide the case based on biases. Because you are making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and to resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or biases. The law demands that you return a just verdict, based solely on the evidence, your individual evaluation of that evidence, your reason and common sense, and these instructions. Our system of justice is counting on you to render a fair decision based on the evidence, not on biases.

- If, at any time during the trial, you have a problem that you would like to bring to my attention, or if you feel ill or need to go to the restroom, please send a note to the Court Security Officer (CSO), who will give it to me. I want you to be comfortable, so please do not hesitate to tell us about any problem.

I will read the remaining Instruction at the end of the evidence.

## No. 16 — DELIBERATIONS[32]

In conducting your deliberations and returning your verdict, there are certain rules that you must follow.

- When you go to the jury room, select one of your members as your foreperson to preside over your discussions and to speak for you here in court

- Discuss this case with one another in the jury room to try to reach agreement on the verdict, if you can do so consistent with individual judgment
  - Nevertheless, each of you must make your own conscientious decision, after considering all the evidence, discussing it fully with your fellow jurors, and listening to the views of your fellow jurors

- Do not be afraid to change your opinions if the discussion with other jurors persuades you that you should, but do not come to a decision simply because other jurors think it is right, or simply to reach a verdict

- Remember that you are not advocates, but judges—judges of the facts
  - Your sole interest is to seek the truth from the evidence in the case.

---

[32] My "stock" Jury Instructions. *See* 8th Cir. Model 3.06 & 3.07.

- If you need to communicate with me during your deliberations, you may send a note to me through the Court Security Officer (CSO), signed by one or more jurors

  - I will respond as soon as possible, either in writing or orally in open court

  - Remember that you should not tell anyone—including me—how your votes stand numerically

- Base your verdict solely on the evidence and on the law as I have given it to you in my Instructions

  - Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide

- Your verdict on each question submitted must be unanimous

- Complete and sign one copy of the Verdict Form

  - The foreperson must bring the signed Verdict Form to the courtroom when it is time to announce your verdict

- When you have reached a verdict, the foreperson will advise the Court Security Officer that you are ready to return to the courtroom.

Good luck with your deliberations.

**DATED** this ___th day of  , 2014.

_____
JOHN A. JARVEY
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

43

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

STEVE PICK,

        Plaintiff,

vs.

CITY OR REMSEN, PAIGE LIST,
RACHAEL KEFFLER, JEFF
CLUCK, CRAIG BARTOLOZZI, and
KIM KELEHER,

        Defendants.

No. C 13-4041-MWB


**COURT'S PROPOSED
VERDICT FORM
(09/10/2014 VERSION)**

_____

**On Mr. Pick's claims and the defendants' defenses, we, the Jury, find as follows:**

| I. LIABILITY | |
|---|---|
| **A. Disability Discrimination Claim** | |
| Step 1:<br>Verdict | On Mr. Pick's "disability discrimination" claim, as explained in Instruction No. 5, in whose favor do you find?  (*If you find in favor of the City on this claim, then you do not need to consider Step 2 as to this claim, but should go on to Section B in this Part.  On the other hand, if you find in favor of Mr. Pick, go on to consider the next step in this Part.*) |
| | ___ Mr. Pick     &#124;     ___ The City |
| Step 2:<br>Same Decision | *If you found for Mr. Pick on his "disability discrimination" claim*, do you find that the City would have made the same decision regardless of his disability, as explained in Instruction No. 5?  (*If* |

1

| | |
|---|---|
| | *you answer "yes," then you do not need to consider Step 3 as to this claim, but should go on to Section B in this Part. On the other hand, if you answer "No," go on to consider the additional step in this Part and in Part II concerning damages.).* |
| | ___ Yes     |     ___ No |
| Step 3:<br>Motivating Factor | *If you found the City liable in Step 2*, please indicate whether you find that the motivating factor for the City's decision to eliminate Mr. Pick's position was his disability; his request for leave; or both his disability and request for leave.<hr>____ Disability<br><br>____ Request for Leave |
| **B. First Amendment Retaliation Claim** | |
| Step 1:<br>Verdict | On Mr. Pick's "First Amendment retaliation" claim, as explained in Instruction No. 6, in whose favor do you find? *(If you find in favor of both defendants Keleher and Bartolozzi on this claim, then you do not need to answer Step 2 as to this claim, but should go on to Section C in this Part. On the other hand, if you find in favor of Mr. Pick as to either or both defendants, go on to consider the next steps in this Part.)* |
| | ___ Mr. Pick or ___ Kim Keleher |
| | ___ Mr. Pick or ___ Craig Bartolozzi |
| Step 2:<br>Same Decision | *If you find for Mr. Pick on his "First Amendment retaliation" claim, as to one or more of the individual defendants*, do you find that each such defendant would have made the same decision regardless of Mr. Pick's threat to file a lawsuit, as explained in Instruction No. 6? *(If you answer "Yes," as to both defendants then you do not need to consider Step 3, but should go on to Section C in this Part. On the other hand, if you answer "No" as to either Keleher or Bartolozzi, then you need to* |

| | |
|---|---|
| | *indicate that such defendant is liable in Step 4 and go on to consider the additional steps in this Part and you must also consider damages on this claim in Part II.)* |
| | Kim Keleher ___ Yes ___ No |
| | Craig Bartolozzi ___ Yes ___ No |
| Step 3:<br>Municipal Liability | *If you find that one or more of the individual defendants, Keleher or Bartolozzi, has not proved his same decision defense, as explained in Instruction No. 6,* do you find that Mr. Pick has established the City's liability, as explained in Instruction No. 6? *(If you answer "Yes," then you need to indicate that the City is liable in Step 4 and go on to consider damages on this claim in Part II. On the other hand, if you answer "No," you do not need to answer Step 4 as to the City, but should go on to Section C in this Part.)* |
| | ___ Yes |
| | ___ No |
| Step 4:<br>Defendants Found Liable | *If you found in Mr. Pick's favor on Step 1 as to an individual defendant, and answered "No" as to that particular defendant in Step 2, then you need to mark such defendant liable below. Additionally, if you found in Mr. Pick's favor on Step 1 as to any individual defendant, answered "No" as to that particular defendant in Step 2, and "Yes" regarding the City in Step 3, then you need to mark the City liable below.* |
| | ___ Kim Keleher |
| | ___ Craig Bartolozzi |
| | ___ The City of Remsen |
| **C. Intentional Infliction of Emotional Distress Claim** | |
| Step 1:<br>Verdict | On Mr. Pick's "intentional infliction of emotional distress" claim, as explained in Instruction No. 7, in whose favor do you find? *(If you found in favor* |

3

| | |
|---|---|
| | *of the defendants on all of Mr. Pick's claims, then you do not need to answer any further questions in the Verdict Form. Similarly, if you have found in favor of Mr. Pick on any of his other claims and answered "Yes" to the same decision question on those particular claims, then you do not need to answer any further questions in the Verdict Form. Instead, notify the Court Security Officer (CSO) that you have reached a verdict. On the other hand, if you find in favor of Mr. Pick against any defendant on this claim, go on to consider damages on this claim in Part II.)* |
| Step 2: Defendants Found Liable | ___ Mr. Pick or ___ Paige List |
| | ___ Mr. Pick or ___ Rachel Keffeler |
| | ___ Mr. Pick or ___ Kim Keleher |
| | ___ Mr. Pick or ___ Craig Bartolozzi |
| | ___ Mr. Pick or ___ Jeff Cluck |
| | |
| **II. DAMAGES** | |
| Step 1: Compensable Damages | *If you found in favor of Mr. Pick on one or more of his claims in Part I, and answered "No" to the same decision question,* what amount, if any, do you award for each of the following items of damages, as compensatory damages are explained in Instruction No. 9? |
| | Past emotional distress   $ _____ |
| | Future emotional distress   $ _____ |
| | Back pay (remember, no back pay may be awarded for intentional infliction of emotional distress)   $ _____ |
| Step 2A: Punitive Damages (Disability Discrimination) | If you found in favor of Mr. Pick on his "disability discrimination" claim, and answered "No" to the same decision question, what amount, if any, do |

| | |
|---|---|
| | you award for "punitive damages," as such damages are explained in Instruction No. 10 ? |
| | $_____ for punitive damages |
| Step 2B:<br>Punitive Damages<br>(First Amendment Retaliation) | *If you found in favor of Mr. Pick on his "First Amendment retaliation" claim*, and answered "No" to the same decision question, what amount, if any, do you award for "punitive damages," as such damages are explained in Instruction No. 10 ? |
| | $_____ for punitive damages |
| Step 2C:<br>Punitive Damages<br>(Intentional Infliction of Emotional Distress) | *If you found in favor of Mr. Pick on his "intentional infliction of emotional distress" claim*, what amount, if any, do you award for "punitive damages," as such damages are explained in Instruction No. 10 ? |
| | $_____ for punitive damages |
| | Was the conduct of the defendants at issue in the "intentional infliction of emotional distress" claim directed specifically at Mr. Pick? |
| | _____ Yes      _____ No |
| Step 2D:<br>Total Amount of Punitive Damages | *If you awarded punitive damages on one or more claims*, what is the total amount of punitive damages that you intend to award for all claims? |
| | $ _____ total punitive damages for all claims |

_____
     Date


_____
    Foreperson                                  Juror


_____
    Juror                                          Juror


_____

5

Juror                                            Juror

_____    _____
Juror                                            Juror